AO 106 (Rev. 04/10)  Application for a Search Warrant

HH

# UNITED STATES DISTRICT COURT
## for the
## Southern District of Ohio

In the Matter of the Search of

*(Briefly describe the property to be searched or identify the person by name and address)*

The residence located at 5863 Warner Springs Drive Westerville, OH 43081, including any curtilage and/or storage units/areas

)
)
)
)
)

Case No.   2:19-mj-357

## APPLICATION FOR A SEARCH WARRANT

       I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

SEE ATTACHMENT B INCORPORATED HEREIN BY REFERENCE

located in the _____ **Southern** _____ District of _____ Ohio _____ , there is now concealed *(identify the person or describe the property to be seized):*

SEE ATTACHMENT A INCORPORATED HEREIN BY REFERENCE

       The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

    ☑ evidence of a crime;

    ☑ contraband, fruits of crime, or other items illegally possessed;

    ☑ property designed for use, intended for use, or used in committing a crime;

    ☐ a person to be arrested or a person who is unlawfully restrained.

       The search is related to a violation of:

| Code Section | Offense Description |
| --- | --- |
| 18 USC Secs 2251(a),(d) &(e) | Attempted production of or advertising of/for child pornography in interstate commerce |
| 18 USC 2252/2252A | Attempted distribution or transmission of child pornography in interstate commerce |

       The application is based on these facts:

SEE ATTACHED AFFIDAVIT INCORPORATED HEREIN BY REFERENCE

    ☑ Continued on the attached sheet.

    ☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Brett M. Peachey, TFO FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date:   5-6-19

_____
*Judge's signature*

City and state: Columbus, Ohio

Chelsey M. Vascura, U.S. Magistrate Judge
*Printed name and title*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT**
**EASTERN DIVISION OF OHIO**

| | |
|---|---|
| In the Matter of the Search of: | ) No. 2:19-mj-357 |
| | ) |
| **The residence located at** | ) **Magistrate Judge** |
| **5863 Warner Springs Drive Westerville, OH 43081** | ) |
| **including any curtilage or storage units/areas** | ) |
| | ) |

**AFFIDAVIT IN SUPPORT OF SEARCH WARRANT**

I, Brett M. Peachey, a Task Force Officer with the Federal Bureau of Investigation (FBI), being duly sworn, hereby depose and state:

## I.    INTRODUCTION, BACKGROUND AND EXPERIENCE

1.     I, TFO Brett M. Peachey, submit this affidavit in support of an application under Rule 41 of the Federal Rules of Criminal Procedure for a warrant to search the residence located at **5863 Warner Springs Drive Westerville OH 43081** (the SUBJECT PREMISES).   The SUBJECT PREMISES to be searched is more particularly described in Attachment B, for the items specified in Attachment A, which items constitute instrumentalities, fruits, and evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A,  – the attempted production, distribution and transmission of or advertising of/for child pornography.  I request authority to search the entire SUBJECT PREMISES, including the residential dwelling, curtilage, and storage units/areas for evidence, fruits, and instrumentalities of the above violations.  The facts set forth in this affidavit are based on my knowledge, experience, and investigation, as well as the knowledge, experience, and investigative findings of others with whom I have had communications about this investigation.  Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation.  I have set forth only the facts I believe are necessary to establish probable cause that evidence of violations of 18 U.S.C. §§ 2251, 2252, and 2252A will be found within the SUBJECT PREMISES.  I have not omitted any facts that would negate probable cause.

2.     I have been employed as a police officer with the City of Westerville since December of 1995.  In March of 2008, I began as a Task Force Officer for the FBI, and am currently assigned to the Child Exploitation Task Force, Cincinnati Division, Columbus Resident Agency.  I am primarily responsible for investigating internet crimes against children, including

1

child pornography offenses and the online exploitation of children. During my career as a Criminal Investigator and TFO, I have participated in various investigations of computer-related offenses and have executed numerous search warrants, including those involving searches and seizures of computers, computer equipment, software, and electronically stored information. I have received both formal and informal training in the detection and investigation of computer-related offenses. As part of my duties as a Criminal Investigator and task force officer, I investigate criminal violations relating to child exploitation and child pornography including the online enticement of minors and the illegal distribution, transmission, receipt, possession, and production of child pornography, in violation of 18 U.S.C. §§ 2252, 2252A, 2251 and 2422.

3.      As a task force officer, I am authorized to investigate violations of the laws of the United States and to execute warrants issued under the authority of the United States.

## II.   APPLICABLE STATUTES AND DEFINITIONS

4.      Title 18 United States Code, Section 2251(a) makes it a federal crime for any person to employ, use, persuade, induce, entice, or coerce any minor to engage in, or have a minor assist any other person to engage in, any sexually explicit conduct for the purpose of producing any visual depiction of such conduct, if such person knows or has reason to know that either the visual depiction will be transported or transmitted via a facility of interstate or foreign commerce or in or affecting interstate or foreign commerce or mailed, or that the visual depiction was produced or transmitted using materials that have been mailed, shipped, or transported in or affecting interstate or foreign commerce, or that the visual depiction has actually been transported or transmitted using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce. Subsection (e) of this provision further prohibits conspiracies or attempts to engage in such acts.

5.      Title 18 United States Code, Section 2251(d)(1)(A) makes it a federal crime for any person to make, print, publish, or cause to be made, printed or published, any notice or advertisement that seeks or offers to receive, exchange, buy, produce, display, distribute or reproduce, any visual depiction involving the use of a minor engaging in sexually explicit conduct, if such person knows or has reason to know that either the notice or advertisement will be transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail; or that the notice or advertisement

2

actually was transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce, including by computer or mail.

6.     Title 18 United States Code § 2252 makes it a crime to knowingly transport, ship, receive, distribute, sell or possess in interstate commerce any visual depiction involving the use of a minor engaging in sexually explicit conduct.

7.     Title 18 United States Code § 2252A(a)(2) makes it a crime to knowingly receive or distribute any child pornography that has been mailed, or using any means or facility of interstate commerce.

8.     As it is used in 18 U.S.C. §§ 2251 and 2252, the term "sexually explicit conduct" is defined in 18 U.S.C. § 2256(2)(A) as actual or simulated: sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex; bestiality; masturbation; sadistic or masochistic abuse; or lascivious exhibition of the genitals or pubic area of any person.

9.     As it is used in 18 U.S.C. § 2252A(a)(2), the term "child pornography"[1] is defined in 18 U.S.C. § 2256(8) as: any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where: (A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct; (B) such visual depiction is a digital image, computer image, or computer generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or (C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

10.    The term "sexually explicit conduct" has the same meaning in § 2252A as in § 2252, except that for the definition of child pornography contained in § 2256(8)(B), "sexually explicit conduct" also has the meaning contained in § 2256(2)(B): (a) graphic sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex, or lascivious simulated sexual intercourse where the genitals, breast, or pubic area of any person is exhibited; (b) graphic or lascivious simulated (i) bestiality, (ii) masturbation, or (iii) sadistic or masochistic abuse; or (c) graphic or simulated lascivious exhibition of the genitals or pubic area of any person.

---

1 The term child pornography is used throughout this affidavit. All references to this term in this affidavit include both visual depictions of minors engaged in sexually explicit conduct as referenced in 18 U.S.C. §

11.     The term "minor", as used herein, is defined pursuant to Title 18, United States Code, Section 2256(1) as "any person under the age of eighteen years."

12.     The term "graphic," as used in the definition of sexually explicit conduct contained in 18 U.S.C. § 2256(2)(B), is defined pursuant to 18 U.S.C. § 2256(10) to mean "that a viewer can observe any part of the genitals or pubic area of any depicted person or animal during any part of the time that the sexually explicit conduct is being depicted."

13.     The term "visual depiction," as used herein, is defined pursuant to T18 U.S.C. § 2256(5) to "include undeveloped film and videotape, and data stored on computer disk or by electronic means which is capable of conversion into a visual image."

14.     The term "computer"[2] is defined in 18 U.S.C. § 1030(e)(1) as an electronic, magnetic, optical, electrochemical, or other high speed data processing device performing logical or storage functions, and includes any data storage facility or communications facility directly related to or operating in conjunction with such device.

## III.    BACKGROUND REGARDING THE INTERNET AND MOBILE APPLICATIONS

15.     The Internet is a worldwide network of computer systems operated by governmental entities, corporations, and universities.  With a computer or mobile device connected to the Internet, an individual user can make electronic contact with millions of other computer or mobile device users around the world.  Many individual computer/mobile device users and businesses obtain their access to the Internet through businesses known as Internet Service Providers ("ISPs").  ISPs provide their customers with access to the Internet using wired telecommunications lines, wireless signals commonly known as Wi-Fi, and/or cellular service; provide Internet e-mail accounts that allow users to communicate with other Internet users by sending and receiving electronic messages through the ISPs' servers or cellular network; remotely store electronic files on their customers' behalf; and may provide other services unique to each particular ISP.

16.     A growing phenomenon related to smartphones and other mobile computing devices is the use of mobile applications.  Mobile applications, also referred to as "apps," are small, specialized programs downloaded onto mobile devices that enable users to perform a variety of functions, including engaging in online chat, reading a book, or playing a game.  Examples of such "apps" include KIK messenger service, Snapchat, and Instagram. KIK messenger, for

---

2252 and child pornography as defined in 18 U.S.C. § 2256(8).

example, is an "app" which allows individuals to chat securely by themselves or in a group, easily allowing the users to communicate while sharing videos and images. KIK messenger also has a short retention time for chats logs and allows a user to destroy all evidence from a chat by simply deleting their KIK messenger account.

## IV. INVESTIGATION AND PROBABLE CAUSE

17. On March 11, 2019, FBI Special Agent Richard Hurst of the Little Rock (AR) Field Office was working in an undercover capacity attempting to identify subjects involved in the online sexual exploitation of children. On this date, Hurst received a message on a popular mobile application which is advertised as being an anonymous form of social media. The sender of the message, later identified as Christopher M. SAMMONS, had a profile on the application advising that he was a "21-25 years old, Male, Columbus, Ohio." Hurst and SAMMONS engaged in a conversation about their mutual sexual interest in children and, during this conversation, SAMMONS claimed that he was sexually active with a six year old family member (hereinafter referred to as Jane Doe). When Hurst also claimed to be engaging in sexual abuse of his fictitious minor family member, SAMMONS also offered to "share her [Jane Doe] next time if you're interested in a long term thing."

18. Hurst asked SAMMONS if he utilized the Kik Messenger App, and SAMMONS responded that he did. Hurst provided SAMMONS with his Kik user name and later received a message on Kik from SAMMONS, who was utilizing the Kik user name "Cw3x." During the ensuing Kik conversations, SAMMONS informed Hurst that he was a 26-year-old male residing in Ohio, provided details of his sexual abuse of Jane Doe, sent Hurst child pornography files, and suggested plans for he and Hurst to exchange videos of them sexually abusing their respective minor family members.

19. In further discussing his sexual abuse of Jane Doe, SAMMONS informed Hurst that he had access to her approximately once every two weeks, and that he "started showing her porn last time she got really into it." SAMMONS then questioned whether Hurst had any "outfits or toys" that he used with his fictitious minor family member, and explained how he utilized a "butt plug" on Jane Doe. SAMMONS then sent Hurst a photograph of the device he had described, and suggested where Hurst could buy one to use on his own minor family member.

20. During discussions regarding the availability of child pornography online, SAMMONS suggested "just make some home made stuff" and then described to Hurst that he once recorded himself inserting a "butt plug" into Jane Doe's anus and offered "I'll have to do it again to show you."

21. On March 20, 2019, after an approximately 9-day lapse in communications, Hurst reached out to SAMMONS again, inquiring when SAMMONS would next have Jane Doe. SAMMONS responded a few days later, saying it would be "this coming Thursday night/Friday". After Hurst indicated that he would try to have his fictitious minor family member at the same time, SAMMONS asked if Hurst had gotten any toys or an outfit for the fictitious victim, and claimed that he had just obtained anal beads to use on Jane Doe. As the conversation about the two victims continued, SAMMONS suggested that Hurst "need to get her a little outfit be super hot, what are you wanting to see when I have ? Want to swap vids or ?" When Hurst responded that he could do whatever SAMMONS wanted to see with the fictitious victim, SAMMONS further suggested and inquired, "we can do vids if your cool with it do you plan on penetrating her". SAMMONS then went on to describe the sex acts he planned to engage in with Jane Doe to show to Hurst:

> I know I'll have her take the plug if anything ill [sic] have her upside down with her legs falling down and her ass and pussy exposed and put it in show you then once it gets so far it just pushes in. Never used the beads before just got them in ordered 2 of them I've never penetrated her before I can try to see if she will let me try her ass

SAMMONS then went on to suggest how Hurst could use a butt plug on his own fictitious minor victim and record it for SAMMONS, and said "hopefully she takes your load in her ass be hot to see drip out".

22. On March 24, 2019, SAMMONS asked Hurst "Still plan on doing the plug" and Hurst responded "Yeah I'm gonna pick that up by Thursday." SAMMONS then sent a photo of two ribbed sex toys that were wrapped in plastic as if they had recently been purchased. One of the items was pink and the other was purple. After sending this image SAMMONS asked "Still plan on buying some?" Hurst responded "Hell yeah! Those aren't too big for her?" to which SAMMONS responded "idk yet Haha but we will find out I already conformed (sic) I'm getting her Thursday night and she's off school Friday so I have more time with her alone."

6

23.  As SAMMONS and Hurst continued to make plans to share videos of them abusing their respective victims, SAMMONS requested a photograph of Hurst's fictitious victim.  In response, Hurst sent three photographs of what was purported to be the nude torso of a prepubescent child wearing underwear with her shift lifted. In response, SAMMONS sent three photographs of a prepubescent child who appeared to be five to six years old in a bathing suit at a pool.  This was later confirmed to be photos of the family member that SAMMONS claimed to be sexually abusing.  SAMMONS claimed that the photographs had been taken that day.

24.  On March 12, 2019, FBI Little Rock issued an administrative subpoena was served on Kik requesting any identifying account information for user name "Cw3x."  Kik responded with the following information:

> First Name:   C
> Last Name:    xl
> E-mail:       widowmaker201@yahoo.com (unconfirmed)

25.  Kik also provided IP address log ins for the account from March 1 through 14, 2019. Almost all of the IP addresses listed resolved to Verizon Wireless.  An administrative subpoena was issued to Verizon Wireless for subscriber information for two of the IP addresses utilized to access the target Kik account on the relevant dates: IP address174.233.19.53 on March 1, 2019, and IP address 174.229.15.93 on March 10, 2019.  Verizon Wireless responded with the following information:

> Last Name:    Sammons
> First Name:   Brittany
> Address:      5863 Warner Springs Drive
>               Westerville, OH 43081

Based on the geographic location indicated by this subscriber information, an investigative lead was forwarded to FBI Columbus.

26.  As part of my duties with the FBI Child Exploitation Task Force and Franklin County Internet Crimes Against Children Task Force, your affiant, TFO Peachey, routinely engages in undercover investigations to identify subjects involved in the online exploitation of children.  During these investigations, your affiant utilizes the profile of a single parent of two minor children on various websites, message boards, and messenger applications.

7

27. On March 25, 2019, after being advised of Hurst's ongoing investigation with SAMMONS, your affiant, utilizing the undercover persona described above, sent a message to SAMMONS' Kik user name "Cw3x" in an attempt to engage him in conversation and get more information regarding SAMMONS' activities. After a brief conversation, SAMMONS asked your affiant "are you into the mother daughter stuff?" During the ensuing conversation, SAMMONS told your affiant about Jane Doe and sent a photo of an approximately six-year-old female in a bathing suit. This photo appeared to be the same as one of the three photographs that SAMMONS sent to Hurst. As your affiant and SAMMONS continued communicating, SAMMONS advised that his name was Chris and they discussed their sexual interests in children. SAMMONS also sent your affiant two photos of himself.

28. As the conversations continued, SAMMONS and your affiant discussed SAMMONS engaging in sexual activity with your affiant's fictitious ten and three year old daughters. SAMMONS then advised that he had been sexually active with Jane Doe for a year by engaging in oral sex and "use a butt plug." In later conversations SAMMONS specifically described some of his recent sexual abuse of Jane Doe, saying, "last time I put the remote vib down her panties and just listened to her moan while she slept", and again later referenced using both a "but (sic) plug and a egg vib I put in her ass."

29. SAMMONS advised that he was going to be picking up Jane Doe after work on March 28, 2019, and would be babysitting through Friday, March 29, 2019. SAMMONS also stated that he would, "send whatever to you when I have her….I don't keep content like that saved just incase (sic)." SAMMONS later stated, "stay up late Thursday I'll send you pics or vids of us…I'll send you something might be around 11ish...Pull her panties off or show her pussy, etc." On March 27, 2019, SAMMONS confirmed the plans for the following evening, saying "Tomorrow night we can do the video call I'll show you we are real."

30. On March 28, 2019, a search warrant was executed at 5863 Warner Springs Drive Westerville, OH 43081. SAMMONS was present at the time and was interviewed on the scene after being advised of his Miranda rights. SAMMONS acknowledged that he was conversing with Agent Hurst's and your affiant's personas online but initially claimed that any talk of sexual activity with his niece was only fantasy. SAMMONS admitted that he had been a member of various Kik groups in the past and that subjects would occasionally post links or files of child

8

pornography. SAMMONS eventually admitted that he had engaged in oral sex multiple times with Jane Doe as well as fondling her vagina and that this activity had started approximately a year prior. SAMMONS also stated that he had taken photos of Jane Doe in the bathtub and of her vagina multiple times and sent them to people that he was communicating with online. SAMMONS stated that he did not recall sending the video depicting the prepubescent female performing oral sex to Agent Hurst on March 11, 2019. However, he did recall sending the Dropbox link to Agent Hurst and admitted that he had possessed similar videos as the one sent to Agent Hurst in the past.

31. Contact was made with Jane Doe's parents and they were advised of the alleged sexual abuse and production of child pornography involving their daughter. They advised that Jane Doe is actually five years of age and that she would occasionally stay overnight with SAMMONS and his wife at their residence, and these visits started approximately a year prior. The family also confirmed that Jane Doe was scheduled to stay overnight at SAMMONS' residence on March 28, 2019.

32. SAMMONS' wife was also interviewed and stated that she generally worked Friday mornings and that SAMMONS would then be alone with Jane Doe for several hours on the days that Jane Doe stayed at their residence. SAMMONS' wife was advised of the "butt plug" and "vibrating egg" that SAMMONS referenced in the conversations with your affiant and Agent Hurst and immediately knew what SAMMONS had been referring to. SAMMONS' wife voluntarily turned over both of these items to your affiant. The "butt plug" appeared to be the same item depicted in the photos that SAMMONS sent to Agent Hurst.

33. Forensic examination of SAMMONS' Samsung smart phone was attempted but was largely unsuccessful with traditional forensic tools. A manual review of the phone revealed that Kik app had been installed and that the Cw3x profile was currently logged in. It should be noted that several investigators tried to manually locate the Kik app on the phone and could not find an icon for it. However, when a search query was done on the phone, the Kik app was located. This indicates that the Kik app was somehow hidden on the phone so that it was not easily located by anyone other than the user. A review of the Cw3x Kik profile on the phone revealed that the most conversations between SAMMONS and Hurst and your affiant. The fact that only a small number of the known conversations were present indicates that SAMMONS was regularly deleting his

9

Kik conversations. The limited forensic examination that was possible, which did not recover any deleted data, revealed the presence of two photos that SAMMONS had sent of himself to your affiant as well as one of the photos of your affiant's fictitious daughters that was sent to SAMMONS. In addition, the three photos of Jane Doe in a bathing suit that SAMMONS had sent to Hurst were also observed. No photos of child pornography have been observed at this point indicating that, as SAMMONS claimed in his interview with your affiant, he routinely deletes any illegal photos or videos.

34. On April 3, 2019, a forensic interview was conducted with Jane Doe at the Child Advocacy Center in Columbus, OH. At that time, she did not disclose any abuse.

35. Also on April 3, 2019, your affiant spoke with SAMMONS' wife and showed her the photograph of the two sex toys that SAMMONS had sent to Hurst on March 24, 2019, as referenced in paragraph 22 above. SAMMONS' wife advised that she had never seen the items before and, to her knowledge, they had not been purchased for their own personal use. In addition, she confirmed that the bedspread in the photo was the same bedspread from their bed at their residence.[3] A review of search warrant photos taken during the execution of the search warrant on March 28, 2019, confirmed that the bedspread in the photo sent by SAMMONS is the same as the one present in SAMMONS' bedroom.

36. Based on the communications between Agent Hurst and SAMMONS', the photograph that SAMMONS sent to Hurst of the two sex toys described above, and the facts that the photograph of the sex toys was clearly taken in SAMMONS' bedroom, yet SAMMONS' wife was unaware that SAMMONS had purchased these items, your affiant has reason to believe that SAMMONS purchased the items in preparation for the sexual abuse he intended to perpetrate on Jane Doe on March 28-29, 2019, which he planned to record and exchange such recording with Agent Hurst. The sex toys thus constitute evidence of SAMMONS' attempt to produce, distribute and transmit child pornography in violation of 18 U.S.C. § 2251(a), 2252, and 2252A, and his making or publishing a notice seeking or offering to receive, distribute, produce or exchange child pornography in violation of 18 U.S.C. § 2251(d).

---

3 SAMMONS' wife has subsequently indicated an unwillingness to further cooperate with law enforcement.

## V. <u>CONCLUSION</u>

37. Based on all of the aforementioned factual information, your affiant submits there is probable cause to believe that violations of Title 18, United States Code, Sections 2251, 2252, and 2252A have been committed, and evidence of those violations is located in the residence described in Attachment B. Your affiant respectfully requests that the Court issue a search warrant authorizing the search and seizure of the items described in Attachment A.

Brett M. Peachey
Task Force Officer
Federal Bureau of Investigation

Sworn to and subscribed before me this _____ 6 _____ day of May 2019.

Chelsey M. Vascura
United States Magistrate Judge
United States District Court
Southern District of Ohio

11

## ATTACHMENT A

### LIST OF ITEMS TO BE SEIZED

The following materials which constitute evidence of the commission of a criminal offense, contraband, the fruits of crime, or property designed or intended for use or which is or has been used as the means of committing a criminal offense, namely violations of Title 18, United States Code, Sections 2251, 2252,and 2252A.

Any sexual stimulation devices or sex toys that may have been referenced by SAMMONS during his conversations with SA Hurst and TFO Peachey.  Specifically, one pink and one purple ribbed sex toys that were depicted in the photos sent to SA Hurst on or about March 24, 2019.

12

## ATTACHMENT B

## DESCRIPTION OF PLACE TO BE SEARCHED

The address of 5863 Warner Springs Drive Westerville, OH 43081 a single story, multi-family apartment building containing five (5) separate units or residences, maroon brick, green front door and shutters, two car attached garage with the numbers "5863" clearly marked to the left of the entrance of the residence

